**Cornelius COOPER, Michael Edwards, Charcella Green, Patricia Harris, Sarah Jean Harris, Irene Mccullers, and Carolyn Wilson, Plaintiffs,**

v.

**SOUTHERN COMPANY, Georgia Power Company, Southern Company Services, Inc., and Southern Company Energy Solutions, Defendants.**

**Civil Action No. 1:00–CV–2231–ODE.**

United States District Court, N.D. Georgia, Atlanta Division.

March 31, 2003.

R. Lawrence Ashe, Jr., Nancy E. Rafuse, Susan Elisabeth Himmer, Paul Hastings Janofsky & Walker, Atlanta, GA, for movant.

Michael B. Terry, Joshua F. Thorpe, Steven Rosenwasser, Bondurant Mixson & Elmore, Atlanta, GA, J. Keith Givens, Angela Joy Mason, Cochran Cherry Givens Smith & Sistrunk, Dothan, AL, Hezekiah Sistrunk, Jr., Cochran Cherry Givens Smith & Sistrunk, Atlanta, GA, Jock Michael Smith, Cochran Cherry Givens & Smith, Tuskegee, AL, Johnnie L. Cochran, Jr., Cochran Cherry Givens & Smith, Los Angeles, CA, The Cochran Firm, Schnieder Kleinick Weitz, New York, NY, for plaintiffs.

W. Ray Persons, King & Spalding, Atlanta, GA, Richard Gerakitis, Stephen William Riddell, Charles A. Hawkins, Frederick Cobb Dawkins, Ashley Zeiler Hager, Sheldon W. Snipe, Troutman Sanders, Atlanta, GA, Eric Jon Taylor, Walter Christopher Arbery, Kelly D. Ludwick, Hunton & Williams, Atlanta, GA, for defendants.

## ORDER

ORINDA D. EVANS, District Judge.

This civil matter alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq., and 42 U.S.C. § 1981 is presently before the court on all Defendants' motion for summary judgment on the individual claims of Plaintiff Charcella Green. For the reasons set forth below, Defendants' motion is GRANTED.

## I. Facts

The following facts are undisputed except as indicated otherwise. Plaintiff first began working for Defendant Georgia Power Company ["GPC"] in 1983, first as an intern, then as a regular full-time employee. In 1986, Plaintiff accepted a position with GPC as a Corporate Communications Representative and became a Senior Corporate Communications Representative in 1987. In 1990, GPC rotated Plaintiff into the position of Assistant to the Director of Corporate Communications. In late 1991, Plaintiff moved into the GPC Educational Services Department and later was assigned to work at GPC's Shenandoah Center, an environmental education center sponsored by GPC, under the management of Director John Thrasher. Plaintiff Dep. I at 99.

In October of 1996, GPC underwent a massive corporate reorganization and, in conjunction with that reorganization, closed GPC's Shenandoah Center. All four full-time employees who worked at the Shenandoah Center lost their positions. Plaintiff and John Thrasher were transferred to GPC's Community and Economic Development Department,[1] while the other two employees were separated from the company. Specifically, Thrasher lost his management title and accepted a position with GPC as an Education Advisor, a position two pay grade levels below the level he held while working as Director of the Shenandoah Center. Other GPC employees also suffered one- or two-level pay grade reductions through the 1996 reorganization. Conversely, although Plaintiff also transferred to GPC's Community and Economic Development Department as an Education Advisor, she suffered no pay grade reduction.

Plaintiff continues to hold the Education Advisor position today. Plaintiff holds the pay grade level of Exempt Level 5, which Defendants allege is the highest possible pay grade for her position as Education Advisor. As an Education Advisor, Plaintiff works within the Education Services Department, which is a subdivision within the Community and Economic Development Department. Plaintiff Dep. II at 106–07. The primary functions of the Community and Economic Development Department are to increase revenues, strengthen community relationships, and increase company branding for GPC. *Id.* at 109; Norton Dep. 31–32. The Education Services subdivision develops relationships with educational groups. *Id.* at 116. Plaintiff spends the majority of her time building relationships with state education leaders. *Id.* at 116–21.

Plaintiff applied for an EEO Coordinator position with Defendant Southern Company Services ["SCS"] in 1999.[2] Plaintiff did not note this pro-

---

**1.** Apparently, the current Community and Economic Development Department was known as the Area Development Organization at the time of 1996 reorganization.

**2.** Defendants The Southern Company ["TSC"] and Southern Company Energy Solutions, Inc. ["SCES"] move for summary judgment on the grounds that Plaintiff has never been employed by nor did she ever apply for positions at TSC or SCES. Plaintiff has failed to respond to SCES's motion and is deemed to have abandoned her claim against SCES. *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995); *Hudson v. Norfolk Southern Ry. Co.*, 209 F.Supp.2d 1301, 1329 (N.D.Ga.2001).

A plaintiff must be an "employee" to bring a Title VII lawsuit. *Llampallas v. Mini–Circuits, Lab, Inc.*, 163 F.3d 1236, 1242 (11th Cir.1998). An "employee" for Title VII purposes is an "individual[ ] who receive[s] compensation from an employer." *Id.* at 1243. An "employer" is a "person engaged in an industry affecting commerce who has fifteen or more employees." 42 U.S.C. § 2000e(b). The analysis of whether a party is an employer appears to be the same under Title VII and

motion application in her complaint and did not refer to it in her discovery responses until January of 2000 because she "forgot about it." Plaintiff Dep. II at 27–28; Plaintiff's Second Am. Interr. Resp. at 3.

Plaintiff believes that GPC began to discriminate against her in terms of her compensation in 1996 when she transferred to the Community and Economic Development Department. James Lovett, John Perryman, Clinton Taylor, Stewart Rodeheaver, and John Thrasher[3] currently work as Community ADO Advisors in the Community Development and Economic Development Department. Myles Smith, James Vaseff, and Steve Foster currently serve as Urban Affairs ADO Advisors. From July of 1998 to July of 2000, Lovett, Perryman, Taylor, Rodeheaver, Thrasher, Smith, Vaseff and Foster reported directly to Lamar Norton.

According to Defendants, GPC employees' individual pay increases are determined by the employees' performance and their placement within the pay grade salary range for their position.

This lawsuit was filed on July 27, 2000; Plaintiff joined as a named party when the Second Amended Complaint was filed on August 14, 2000. In the complaint, Plaintiff alleges that Defendants discriminated against her by paying her less than her white co-workers and by improperly denying her promotions.

## II. *Defendants' Motion for Summary Judgment*

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the [Defendant] is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail in their motion for summary judgment, Defendants must show that the evidence is insufficient to establish an essential element of Plaintiff's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling on Defendants' motion, the court must view the evidence in a light most favorable to Plaintiff. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). If Defendants make a sufficient showing, then Plaintiff "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)).

Under Title VII, an employer may be found liable for unlawful discrimination under any one of three discrete

---

§ 1981. *See Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir.1998) (noting that these statutes have the same requirements of proof and use the same analytical framework); *Richard v. Bell Atlantic Corp.*, 946 F.Supp. 54, 61 n. 2 (D.D.C.1996); *Sargent v. McGrath*, 685 F.Supp. 1087, 1089 (E.D.Wis.1988); *Alie v. NYNEX Corp.*, 158 F.R.D. 239, 245 n. 3 (E.D.N.Y.1994). Thus, Plaintiff has standing to sue TSC only if it can be shown that TSC constituted an "employer" from whom Plaintiff received compensation.

It is undisputed that TSC is a holding company which owns the stock of all other Defendants named in the complaint but has no

employees. Womack Aff. ¶ 9. Plaintiff asserts that Defendants, including TSC, created SCS as a company-wide human resources department and use SCS's "extensive involvement in personnel policy-making and employee selection processes" to maintain "substantial involvement in GPC's personnel decisions." Plaintiff fails to point to any facts in the record to support these allegations. Accordingly, Defendants' motion for summary judgment is GRANTED with respect to TSC and SCES.

**3.** Thrasher was transferred to the Community Advisor position in 1997. Thrasher Dec. ¶ 10.

theories: disparate treatment discrimination, pattern and practice discrimination, or disparate impact discrimination. *EEOC v. Joe's Stone Crab*, 220 F.3d 1263, 1273 (11th Cir.2000).[4] The first two theories require proof of discriminatory intent, while the third does not. *Id.* at 1273. Defendants argue that summary judgment is appropriate here because Plaintiff has failed to establish a claim of intentional discrimination or disparate impact. Plaintiff objects, arguing that there are genuine issues of material fact precluding summary judgment as to both of Plaintiff's intentional discrimination claims.

A. *Intentional Discrimination*

■ To establish a prima facie case of race discrimination under a disparate treatment theory, Plaintiff may offer either direct or circumstantial evidence of discriminatory intent. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Alexander v. Fulton County, Ga.*, 207 F.3d 1303 (11th Cir.2000). If the plaintiff presents direct evidence of discrimination, the defendant is then required to prove by a preponderance of the evidence that it would have taken the adverse employment action even in the absence of discrimination.

■ If the plaintiff provides sufficient circumstantial evidence to support a prima facie case, a legal presumption of unlawful discrimination arises and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged employment action. *McDonnell Douglas*, 411 U.S. at 802–03, 93 S.Ct. 1817. The defendant's burden is "exceedingly light" and is "one of production, not proof." *Id.* at 802, 93 S.Ct. 1817. If the defendant satisfies its burden, the

presumption of discrimination is eliminated and the plaintiff must be given an opportunity to prove by a preponderance of the evidence that the legitimate reason offered by the defendant is a pretext for discrimination. *Id.*

■ A plaintiff may also use statistical evidence to establish either a prima facie case of discrimination or pretext. *Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 952 (11th Cir.1991). Statistics may be used to establish an individual plaintiff's claim that a pattern or practice of discrimination existed, or simply to bolster the plaintiff's circumstantial evidence of individual disparate treatment. Under the pattern and practice theory, the plaintiff must provide evidence sufficient to establish that impermissible discrimination was the employer's "standard operating procedure." *Joe's Stone Crab*, 220 F.3d at 1274–75, 1286–87 (internal quotation marks and citation omitted). Even if the statistical evidence is insufficient to meet this standard, evidence establishing a discriminatory pattern "is probative of motive and can therefore create an inference of discriminatory intent with respect to the individual employment decision at issue." *Parker v. Burnley*, 693 F.Supp. 1138, 1153 (N.D.Ga.1988) (internal quotation marks and citation omitted). Whether the plaintiff argues that the statistical evidence supports a pattern or practice claim or simply constitutes evidence of disparate treatment, "[t]he ultimate inquiry remains whether the plaintiff has demonstrated that the defendant *intentionally* discriminated in refusing to enter into a contractual relationship." *Brown*, 939 F.2d at 952 (citing *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir.1987)).

4. Section 1981 provides a cause of action only for claims of intentional discrimination. *See Washington v. Davis*, 426 U.S. 229, 239, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); *Ferrill v. Parker Group, Inc.*, 168 F.3d 468, 472 (11th Cir.1999).

### 1. *Individual Disparate Treatment*

#### *Promotion Discrimination*

The Court determined in the order denying class certification that Plaintiff has standing to pursue only a claim of compensation discrimination under 42 U.S.C. § 1981. *Cooper v. Southern Company,* 205 F.R.D. 596, 606 (N.D.Ga.2001). This ruling was based on the facts alleged by Plaintiff at the time the certification issue was decided and the statute of limitations applicable to her claims. Defendants argue that they are therefore entitled to summary judgment on Plaintiff's claims with respect to promotion discrimination. Plaintiff argues in response that she has valid promotion claims with respect to one position: Manager of Education Services, for which she applied in 1998. Plaintiff cannot establish a claim based on this position.

Plaintiff's claims are barred to the extent they relate to alleged events occurring more than two years prior to the filing of this suit. *Hill v. Metropolitan Atlanta Rapid Transit Auth.,* 841 F.2d 1533, 1546 (11th Cir.1988) (applying a two year statute of limitations to § 1981 claims). This lawsuit was filed on July 27, 2000; therefore, Plaintiff's claims must be based on events occurring after July 28, 1998.[5]

Under federal law, the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights. *Everett v. Cobb County Sch. Dist.,* 138 F.3d 1407, 1410 (11th Cir.1998); *Calhoun v. Ala. Alcoholic Beverage Control Bd.,* 705 F.2d 422, 425 (11th Cir.1983). Plaintiff argues that her claim with respect to the Manager position is timely because she did not learn that the position had been filled by a "less qualified" white applicant until August 1998. To support this argument, Plaintiff testified in an affidavit as follows:

> Thomas did not assume the Manager position until August of 1998.

> I was unaware that a less-qualified Caucasian was awarded the Manager position instead of me until August of 1998 when Thomas assumed the Manager position.

Plaintiff Aff. ¶¶ 67–68.

However, this evidence conflicts with Plaintiff's prior deposition testimony indicating that she was aware by early July 1998 that the position had been filled by Pam Thomas.

Q: Now, when Ms. Page [Thomas's predecessor] went out on maternity leave, . . . she told people she had planned to come back, correct?

A: Uh-huh, that is correct.

Q: So you didn't know there was going to be a vacancy until she came back and worked for a while and said, I'm quitting for good?

A: That is correct.

Q: And that was in approximately August of '98, right?

A: No, that was in June of '98.

Q: June of '98?

A: Uh-huh.

Q: And then when was the position refilled by Ms. Thomas?

A: It was either toward the end of June or the first part of July, I don't remember.

---

**5.** Plaintiff argues that she can assert any claim arising within two years preceding July 18, 2000, the date on which Tracey Isom filed an EEOC charge alleging class-wide race discrimination. The Court rejects this argument. Tracey Isom is not a party to this lawsuit and Plaintiff has failed to demonstrate how Isom's EEOC charge is relevant to these proceedings. Further, even if the EEOC charge were relevant, it would only provide Plaintiff with standing to pursue claims arising 180 days before such charge was filed.

Plaintiff Dep. I at 253–54. Plaintiff also testified that she discussed her failure to obtain the promotion during her performance review held "about two days" after she learned that Thomas had been awarded the position. *Id.* 180–82.

Q: How did you find out that Ms. Thomas had gotten the job?

A: I got a voice mail.

Q: From who?

A: Lamar Norton.

Q: And what did the voice mail say?

A: That Pam Thomas had been awarded the position as manager of educational services.

Q: Did you speak to anybody after that about the fact that she had been promoted?

A: Yes, I did.

Q: Who did you talk to?

A: I talked to several people.... [A]bout two days after Pam Thomas got that job, I had my review with Mary Page and Lamar Norton.

*Id.* This performance review was held on July 15, 1998. Plaintiff Aff., Ex. BB.

■ When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony. *Van T. Junkins and Associates, Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984). Plaintiff does not explain the discrepancy between her deposition and affidavit testimony. Therefore, Plaintiff's deposition testimony will control where Plaintiff's affidavit testimony is expressly contradicted. *Reid v. Lockheed Martin Aeronautics Co.*, 205 F.R.D. 655, 663 (N.D.Ga.2001). Plaintiff's deposition testimony clearly establishes that she was aware that Thomas had been awarded the position sometime in early to mid-July 1998. Accordingly, the statute of limita-

tions for any claim based on that employment decision began to run before July 28, 1998, rendering any such claim untimely.

■ Plaintiff argues in the alternative that the statute of limitations should be equitably tolled because Defendants allegedly misled Plaintiff by claiming the company would investigate whether she was discriminated against but denied Plaintiff any information about such investigation. "Tolling is an extraordinary remedy which should be extended only sparingly." *Justice v. U.S.*, 6 F.3d 1474, 1479 (11th Cir. 1993). According to Plaintiff, after learning that she had been denied the position, she contacted the Defendants' EEO office and requested an investigation into the denial. Plaintiff further claims that she never received any information about an investigation, including whether an investigation was ever conducted. Plaintiff argues that she was thus unable to determine whether the selection process was fair "until Thomas assumed the position in August." Plaintiff's Response at 6.

■ This argument does not justify the tolling of the statute of limitations. First, Plaintiff's deposition testimony contradicts her assertion that she did not learn until August that Thomas had been awarded the job. Further, Plaintiff's allegations that Defendants did not share any information with her about an investigation do not provide a basis for the "extraordinary" remedy of tolling. Plaintiff provides no evidence other than her affidavit testimony with respect to whether an investigation was ever conducted or even as to whether she actually made such request. Assuming, however, that such request was made, Plaintiff has pointed to no evidence that Defendants withheld any information from her or otherwise discouraged her from filing suit. Based on Plaintiff's own assertions, she knew at least from August 1998 of the facts upon which this claim is based

but failed to pursue the claim for almost two years. That Plaintiff did not have all of the evidence she would need to succeed on her claim when she first became aware of these facts does not justify tolling. *See Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 660 n. 19 (11th Cir.1993).

However, even if the claim was timely, Defendants are also entitled to summary judgment on the merits of the claim. Defendants do not dispute that Plaintiff would be able to establish a prima facie case of promotion discrimination but contend that Plaintiff was not hired because the successful candidate was better qualified for the position than Plaintiff. Norton Dep. 89–90. Plaintiff does not address this asserted non-discriminatory reason for the decision.[6]

█ However, Plaintiff has provided statistical evidence of racial imbalances in Defendants' promotion and compensation practices as evidence of pretext. Specifically, Plaintiff has offered statistical reports to support her claim that Defendants' practices had a discriminatory effect on black employees. Plaintiff argues that the reports of her expert, Dr. Madden, which find statistically significant disparities in the promotion and compensation of black employees relative to white employees, are evidence from which a reasonable factfinder could determine that intentional discrimination occurred. Defendants contend that Plaintiff's generalized statistics are insufficient to support Plaintiff's claims of intentional discrimination.

█ As the Supreme Court has noted, while statistical evidence may allow the District Court to "determine ... that the (racial) composition of defendant's labor force is itself reflective of restrictive or exclusionary practices .... such general

determinations, while helpful, may not be in and of themselves controlling as to an individualized hiring decision, particularly in the presence of an otherwise justifiable reason for refusing to hire." *McDonnell Douglas*, 411 U.S. at 805 n. 19, 93 S.Ct. 1817 (internal quotation marks and citation omitted). In this case, Plaintiff's statistical evidence is insufficiently tailored to support her individual claims.

Plaintiff's statistics compare the promotion rate of employees within the same pay grade who perform similar job functions; however, these statistics generally fail to compare similarly situated individuals, significantly diminishing the probative value of any disparity. For example, Plaintiff's statistics do not account for differences in the type or level of the employees' applied skills, both of which are highly related to hiring decisions. Plaintiff does not provide statistics comparing employees with equivalent work experience in specific job categories or job progressions, or outcomes for those employees, both black and white, who had actually applied for posted positions challenged by Plaintiff. Plaintiff relies instead on a statistical analysis of a company-wide data pool and makes no attempt to narrow the data pool to the locations in which she worked or the positions which she challenges. As this Court noted in the order denying class certification, the probative value of Plaintiff's statistical evidence is therefore highly questionable, in significant part due to the treatment of factors such as experience, education, and specific promotion processes. *Cooper v. Southern Company*, 205 F.R.D. 596, 613–14 (N.D.Ga.2001).

The analytical deficiencies of Plaintiff's statistics diminish the probative value of this evidence such that it cannot by itself

---

6. Instead, Plaintiff argues that Defendants failed to offer a justification for denying Plaintiff the position. Plaintiff's Response to Defendants' Motion for Summary Judgment at 6, 11.

support a claim of disparate treatment. *See Brown v. American Honda Co.,* 939 F.2d 946, 952 (11th Cir.1991) (holding that summary judgment was appropriate where plaintiff's statistical evidence, which lacked specific analytical foundation and thus failed to show that employer maintained discriminatory intent, was insufficient to establish prima facie case or pretext); *Hawkins v. Ceco Corp.,* 883 F.2d 977, 985 (11th Cir.1989) (holding that plaintiff's statistical evidence failed to establish prima facie case or pretext where evidence failed to make specific analytical comparisons); *cf. James v. Stockham Valves & Fittings Co.,* 559 F.2d 310, 330 (5th Cir.1977) (holding that plaintiff's evidence of statistical disparities in hiring, promotion and compensation was sufficient to support claim of intentional discrimination where the employment decisions were based on *completely* subjective criteria).[7]

Because Plaintiff has failed to establish pretext with respect to Defendants' asserted reason, Defendants are entitled to summary judgment with respect to this claim. *See Chapman v. A.I. Transport,* 229 F.3d 1012 (11th Cir.2000); *Combs,* 106 F.3d at 1529.

### Other Positions

In the complaint, Plaintiff alleged that she had been discriminated against when she was denied the following positions: Community Advisor, Manager of Education Services in 1996, the managerial position currently held by Christy Terrell, the managerial position currently held by Rick Kimball, and Assistant Vice President of Government and Regulatory Affairs. Third Amended Complaint ¶¶ 109–113. With respect to managerial positions held by Terrell and Kimball, Defendants argue that Plaintiff cannot establish a claim because she did not apply for these jobs. With respect to the EEO Coordinator po-

sition, Defendants argue that Plaintiff was not awarded the position because she did not possess the appropriate qualifications. With respect to the Assistant Vice President position, Defendants argue that Plaintiff cannot establish a discriminatory promotion claim because she never applied for the position. Plaintiff has failed to respond specifically to Defendants' motion for summary judgment with respect to any promotion claim other than the Manager of Education Services position for which she applied in 1998. Defendants are therefore entitled to summary judgment with respect to these other positions. *See Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir.1995); *Hudson v. Norfolk Southern Ry. Co.,* 209 F.Supp.2d 1301, 1329 (N.D.Ga.2001). Accordingly, Defendants' motion for summary judgment is GRANTED with respect to Plaintiff's promotion claim.

### Compensation Discrimination

 Plaintiff also claims that Defendants discriminated against her by paying her less than similarly situated white employees. Defendants first argue that this claim is barred by the statute of limitations because Plaintiff was aware of the allegedly discriminatory acts outside the statutory period. As noted above, "[c]laims of discrimination accrue when the plaintiff is informed of the discriminatory act." *Everett,* 138 F.3d at 1410. Defendants contend that Plaintiff should have filed her claim within two years of the 1996 corporate reorganization, based on Plaintiff's testimony that she first began to believe that she was discriminated against with respect to pay at that time. Plaintiff Dep. II at 125–26; 131–32. In response, Plaintiff contends that her claim is not barred because compensation discrimination constitutes a continuing violation

---

**7.** This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

bringing her claim within the statute of limitations. The Court of Appeals for the Eleventh Circuit has held that "race based, discriminatory wage payments constitute a continuing violation of Title VII." *Calloway v. Partners Nat. Health Plans*, 986 F.2d 446, 449 (11th Cir.1993); *see also Bazemore v. Friday*, 478 U.S. 385, 395, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986). Because Plaintiff remains employed by Defendants and apparently contends that the alleged compensation discrimination continues, her claim is timely.

■ To make out a prima facie case of compensation discrimination, Plaintiff must establish the following four elements: 1) that she is a member of a protected class; 2) that she received low wages; 3) that similarly situated persons outside the protected class received higher wages; and 4) that she was qualified to receive the higher wages. *MacPherson v. University of Montevallo*, 922 F.2d 766, 774 (11th Cir.1991) (applying the test in an age discrimination case). Defendants do not dispute that Plaintiff is a member of a protected class or that she received low wages but argue that they are entitled to summary judgment on this claim because Plaintiff has failed to establish that she was similarly situated to any of her white co-workers who received higher pay.

■ "In a comparator analysis, the plaintiff is matched with a person or persons who have very similar job-related characteristics and who are in a similar situation to determine if the plaintiff has been treated differently than others who are similar to him." *Id.* Defendants contend that Plaintiff's only valid comparator is Plaintiff's white co-worker, Elise Hare. Hare, a white female, holds the same position as Plaintiff—Education Advisor—but, according to Defendants, earns approxi-

mately $10,000 less than Plaintiff. In response, Plaintiff argues that eight of her white co-workers who earn more than she does are proper comparators because their job functions are similar to hers.

Plaintiff's position, Education Advisor, is included in the "ADO Advisor" category within Defendants' employment database. Plaintiff argues that she is similarly situated to eight other employees whose positions fall within the ADO Advisor category.[8] While these employees fall within the ADO Advisor category, their functional job titles are either Community Advisor or Urban Affairs Advisor.[8] Defendants argue that the Community and Urban Advisors are not proper comparators because they do not perform similar duties to Plaintiff.

Plaintiff testified that she is the primary GPC contact for the Georgia School Board Association, the Georgia School Superintendent Association, the Department of Education, the Georgia Association of Educational Leaders, and the Professional Association of Georgia Educators. According to Plaintiff, her duties include working with local communities to discuss issues relating to education, education reform, and economics; facilitating relationships with state and local leaders; strategic planning; leadership training; public policy development; traveling statewide to influence education reform; interacting with local governments and agencies; working with Chambers of Commerce on economic issues; and helping communities devise means to raise revenue for projects. Plaintiff Aff. ¶¶ 16–27.

According to Defendants, the Community Advisors are responsible for working with local communities to help them prepare for future economic growth, under-

---

**8.** Plaintiff contends that she is similarly situated to Community Advisors James Lovett, John Perryman, Clinton Taylor, Stewart Rodeheaver, and John Thrasher and Urban Advisors Myles Smith, James Vaseff, and Steve Foster.

stand their role in the community, and assess their community infrastructures; meeting with community leaders to discuss the economic development process and identifying funding resources; facilitating relationships between local leaders and other members of the community; strategic planning; leadership training; public policy development; providing specialized training to elected officials and community leaders in systems thinking, board governance, behavior styles, tax digesting, consensus building, and strategic leadership; and traveling statewide to assist business customers and industry organizations with strategic planning and energy-related needs.

The Urban Advisors are responsible for strategic planning, urban redevelopment, and smart growth planning, primarily for the Atlanta metropolitan area; interacting with local governments and regional agencies; developing regional policies and facilitating meetings between different organizations, communities, and agencies; and strategic planning for rezoning projects, urban revitalization, and design issues.

To show that she performed a similar job as her white co-workers, Plaintiff must show only that "she shared the same type of tasks" as her alleged comparators. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1529 (11th Cir.1992) (finding plaintiff established proper comparator where evidence, including description of the type of duties she performed and testimony from defendant's witnesses, established that she shared the same type of tasks as the other buyers). Plaintiff has met this burden. While the testimony of Plaintiff's alleged comparators indicates that their work is primarily focused on different audiences and sometimes requires specialized knowledge, these employees perform the same type of community outreach and planning functions that Plaintiff does. Plaintiff also provided evi-

dence that she and some of her alleged comparators often work together on outreach projects to reach both educational and general community audiences. Plaintiff Aff. ¶¶ 20–27. While Defendants offered the testimony of the alleged comparators and their supervisor that Plaintiff does not perform duties similar to theirs, Plaintiff has provided sufficient evidence to support a finding that she and the other ADO Advisors "shared the *same type* of tasks." *Miranda*, 975 F.2d at 1529 (emphasis added); *see also Moye v. Fleming Co., Inc.*, 924 F.Supp. 1119, 1130 (M.D.Ala. 1996) (holding that plaintiff established proper comparator where the description of plaintiff's tasks and other supervisor's tasks showed that although no other supervisor did exactly the same job as plaintiff, she performed at least some of the same tasks and had a similar degree of responsibility as at least some of alleged comparators).

■■■ However, Defendants have provided a legitimate, non-discriminatory reason for Plaintiff's lower pay. According to Defendants, Plaintiff is paid less than her comparators because a market survey, conducted by Defendants, indicated that the value of an Education Advisor was less than that of a Community or Urban Affairs Advisor in the applicable region. Specifically, Defendants contend that pay grade ranges for positions at GPC are established by market surveys and studies of similar positions at other companies in the region. Blalock Dep. at 9–10; Norton Dep. at 196. In 1996, GPC conducted a market survey which resulted in coding the Education Advisor position as exempt level three to exempt level five pay grade range and coding the Community and Urban Affairs Advisor positions as exempt level five to exempt level seven because the value of these positions was deemed to

be higher than the Education Advisor position. Blalock Dep. at 92, 143–44.

 Plaintiff attempts to establish pretext by arguing that the market survey is not the real reason for Plaintiff's lower pay. Specifically, Plaintiff argues that Defendants' market survey results do not justify Plaintiff's lower pay because black Community and Urban Affairs Advisors earn less than their white counterparts and because the market survey did not actually determine that the Education Advisor was valued lower than the other ADO Advisor positions. Plaintiff, however, has failed to come forward with sufficient evidence to support her claims.

 The proper pretext analysis is whether Plaintiff has demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1538 (11th Cir.1997). To support her claim that the Community and Urban Affairs Advisor positions are not actually more highly valued than the Education Advisor position, Plaintiff submits the 2000 Performance Pay Plan for Deryl Belser. App. to Pla. Resp. to Def. Mot. S. J., Ex. 26. The document indicates that Belser held the position of ADO Advisor II and received a base salary increase in 2000 from $45,544 to $48,290. Although Plaintiff contends in her response that Belser is black and that he is an Urban Affairs Advisor, she has presented no evidence to support these assertions. Plaintiff also contends that Nettie Felder, a black ADO Advisor was paid less than Felder's white co-workers, but Plaintiff fails to point to any evidence that supports this claim. Thus, these claims do not create an issue as to whether Community and Urban Affairs Advisors are actually valued more highly than the Education Advisors.

Plaintiff also argues that the market survey conducted by Defendants in 1996 does not indicate that Education Advisors are less valuable than the other ADO Advisors. To survive summary judgment, Plaintiff must come forward with evidence of specific facts to contradict Defendants' reason. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). To support her argument with respect to the market survey, Plaintiff contends that Defendants have provided no evidence to support their claim that a market study was performed with respect to the ADO Advisor positions. Plaintiff has provided a copy of a market survey of GPC positions conducted in 1996 which does not appear to include information about the positions at issue. However, as noted above, Defendants did provide testimony that such a market study was conducted and that the results valued the Community and Urban Affairs Advisor positions more highly. Blalock Dep. at 92, 143–44. That Defendants did not include the ADO Advisor positions in the market survey report is not substantially probative; Plaintiff provides no evidence with respect to whether that survey included all positions within the company or whether formal market surveys were even required. Based on this evidence, the inference that Defendants did not actually survey the market with respect to the ADO Advisor positions is no more likely than the inference that they did conduct such a survey. Thus, Plaintiff has failed to create a genuine issue of fact precluding summary judgment. *Cf. James v. Otis Elevator Co.,* 854 F.2d 429, 432 n. 3 (11th Cir. 1988).

However, Plaintiff also argues that she was discriminated against because she received unfairly low merit increases and incentives. Specifically, Plaintiff contends that she unfairly received lower merit in-

creases than John Thrasher received. According to Plaintiff, her lower increases were unfair because although the merit increases are based on an employee's performance, Thrasher, despite receiving poor performance evaluations, received higher increases than Plaintiff. Plaintiff, however, has failed to point to evidence to support her assertion that Thrasher received higher merit increases than she did.

Plaintiff points to Thrasher's performance pay plans for 1999 and 2000 but only refers to her performance pay plans for 1997, 1998 and 2000. Thus, the only evidence to support Plaintiff's claim that Thrasher received higher increases than she did are the 2000 plans, which indicate that Plaintiff received a 2.58% merit increase and 16% incentive award while Thrasher received a 2.26% merit increase and 11.6% incentive award. While Plaintiff purports to offer evidence that she earned a lower percentage merit increase in 1999 than Thrasher did, the document that she submitted in this respect is inadmissible. That these percentage awards resulted in higher actual awards for Thrasher due to his higher base salary is not evidence of discrimination because Defendants have already offered a non-discriminatory explanation for that difference in compensation. Plaintiff has therefore failed to produce evidence sufficient to support a finding of pretext. Accordingly, Defendants' motion for summary judgment with respect to Plaintiff's compensation claims is GRANTED.

### 2. *Pattern and Practice*

■ Plaintiff has failed to create a genuine issue of material fact as to whether a pattern or practice of discrimination existed. As discussed above, Plaintiff has provided statistical evidence in an attempt to establish pretext. While "statistics as to [Defendants'] employment policy and practice may be helpful to a determination of whether [Defendants'] refusal to [ ]hire [Plaintiff] in this case conformed to a general pattern of discrimination against blacks," *McDonnell Douglas,* 411 U.S. at 805, 93 S.Ct. 1817, to have probative value, statistical evidence must be tailored to the appropriate types of decisions and specific populations involved. *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 651–55, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989); *In re: Employment Discrimination Litig. Against the State of Ala.,* 198 F.3d 1305, 1312 (11th Cir.1999) The analytical deficiencies of Plaintiff's statistical evidence, discussed above, render this evidence insufficient to support a pattern or practice claim.

■ In addition to Plaintiff's expert reports, Plaintiff offers Defendants' internal personnel documents to support her argument that Defendants maintained a pattern or practice of compensation discrimination. While these documents indicate some disparity in compensation between black and white employees, these documents are not probative as to whether Defendants intentionally discriminated against Plaintiff during the period in question. The documents indicate average salaries of employees divided by racial classification but do not control for factors such as education, experience or skill level and thus cannot prove that Defendants discriminated on the basis of race. Plaintiff has thus failed to come forward with evidence sufficient to prove that intentional discrimination was Defendants' "standard operating procedure." *Joe's Stone Crab,* 220 F.3d at 1274–75 Accordingly, Defendants' motion for summary judgment with respect to Plaintiff's pattern and practice claim is GRANTED.

### B. *Disparate Impact*

■ Finally, Defendants argue that Plaintiff has failed to establish a claim of disparate impact under Title VII. To es-

tablish a claim under a theory of disparate impact, Plaintiff must show 1) the existence of a statistically significant disparity among members of different groups affected by employment decisions; 2) the existence of a specific, facially neutral employment practice; and 3) the existence of a causal nexus between the specific, facially neutral employment practice and the statistically significant disparity. 42 U.S.C. § 2000e–2(k); *Joe's Stone Crab*, 220 F.3d at 1274; *In re: Alabama*, 198 F.3d at 1311–14. Defendants contend that Plaintiff's statistics, which are not adjusted to account for differences among various positions and the respective skill and education levels required, are insufficient to establish a statistically significant disparity required to state a claim and that even if Plaintiff could establish such disparity, she has failed to show a causal link to a neutral employment practice.

As evidence of a facially neutral policy, Plaintiff points to Defendants' promotion and compensation policies, which Plaintiff contends permits subjective, discretionary, and unmonitored decisions. While Plaintiff has failed to identify in her response to Defendants' motion for summary judgment a specific policy which has had an impermissibly discriminatory impact on her, Plaintiff provided evidence in her motion for class certification to support her claim that Defendants allowed the use of subjective criteria by decisionmakers in each of their subsidiaries.

■ However, simply showing that Plaintiff was subject to subjective policies does not establish a prima facie case of disparate impact. Plaintiff must also show the existence of a causal nexus between these specific, facially neutral employment practices and a statistically significant disparity. " '[P]laintiff must offer statistical evidence of a kind and degree sufficient to show that *the practice in question* has *caused* the exclusion of applicants for jobs

or promotions because of their membership in a protected group.' " *Joe's Stone Crab*, 220 F.3d at 1275 (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994–95, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988)). In this case, Plaintiff has failed to establish that manager discretion in compensation and promotion decisions caused a statistically significant disparity.

■ To establish the first element of a disparate impact claim, Plaintiff relies on her expert's report which finds statistically significant disparities in the compensation of black employees relative to white employees. As Defendants note, however, to have probative value, statistical evidence must be tailored to the appropriate types of decisions and specific populations involved. *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 651–55, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989); *In re: Alabama*, 198 F.3d at 1312. While Plaintiff's expert reports an over-all statistical disparity between black and white employees in compensation, Plaintiff's evidence generally fails to compare similarly situated individuals, significantly diminishing the probative value of any disparity. For example, Plaintiff's statistics do not account for differences in the type or level of the employees' applied skills, both of which are highly related to compensation.

Even if these statistics were sufficient to establish a statistically significant disparity, Plaintiff cannot establish the existence of a causal nexus between the disparity and a specific, facially neutral employment practice. As noted above, Plaintiff has failed to indicate a specific facially neutral practice other than the use of manager discretion in compensation decisions. Further, Plaintiff has presented only company-wide statistics and does not tailor the data to control for factors such as skill level and experience. For Plaintiff to establish that the use of a practice as broad

and amorphous as manager discretion causes a statistically significant disparity would require Plaintiff to eliminate the effect of variation in these factors, which she has failed to do in the statistics currently before the Court. Therefore, Defendants' motion for summary judgment with respect to Plaintiff's disparate impact claim is GRANTED. *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1118 (11th Cir. 1993) (holding that employer is entitled to summary judgment where plaintiff fails to provide evidence necessary to prove at trial that there is disproportionate impact of employer's policy on black employees).

For the reasons stated above, Defendants' motion for summary judgment [# 201] is GRANTED.